MORRIS SHEPPARD ARNOLD, Circuit Judge.
This is a suit to enjoin the enforcement of Mo.Rev.Stat. § 130.032.4 and § 130.032.7, which limit the amount of cash and in-kind contributions that political parties may make to a candidate for public office, and provide penalties for violating the limitations that those statutes set. The plaintiffs (a political party, candidate committees, and candidates for public office) asserted that these statutes violated their rights of free speech under the First Amendment. When the district court refused to grant the plaintiffs relief, we reversed and remanded with instructions to the district court to enter an injunction. See Missouri Republican Party v. Lamb, 227 F.3d 1070 (8th Cir.2000), cert, granted and opinion vacated sub nom. Nixon v. Missouri Republican Party, — U.S. —, 121 S.Ct. 2584, 150 L.Ed.2d 745 (2001) (mem.). The state of Missouri then sought a writ of certiorari from the United States Supreme Court; the Supreme Court granted the writ, vacated our judgment, and directed us to reconsider the case in light of Federal Election Comm’n v. Colorado Republican Fed. Campaign Comm., 533 U.S. 431, 121 S.Ct. 2351, 150 L.Ed.2d 461 (2001) (Colorado II). See Nixon, — U.S. at—, 121 S.Ct. at 2584. Upon further consideration, we affirm the judgment of the district court.
I.
In Colorado II, the Court held that political parties’ first amendment claims are entitled to no higher level of scrutiny than claims advanced by individuals or Political Action Committees, and that a state may constitutionally limit the amount of money that a party spends in coordination with its own candidate. 121 S.Ct. at 2366. In upholding the limitations on party contributions found in 2 U.S.C.A. § 441a(d)(3), the Supreme Court held that there was sufficient evidence in the record before it to support a legislative judgment that unregulated party contributions served to circumvent the contribution limits imposed on individuals set out in 2 U.S.C. § 441a(a). “What a realist would expect to occur has occurred,” the Court said. “Donors give to the party with the tacit understanding that the favored candidate will benefit.” Id. at 2367. The Court observed that candidates raise money for parties with the understanding that the candidates will receive party support in proportion to the amount that they raise and that candidates use the promise of *570 future party support as an inducement when soliciting money. Id. at 2367-68. The Court further held that 2 U.S.C. § 441a(a)(8), which provides that contributions that “are in any way earmarked or otherwise directed through an intermediary or conduit to [a] candidate” are treated as contributions to the candidate, was not so effective a means of preventing circumvention that the First Amendment prevented resort to other means of prevention. The Court believed that holding otherwise would ignore “the practical difficulty of identifying and directly combating circumvention under actual political conditions.” Id. at 2370. “The earmarking provision,” the Court concluded, “would reach only the most clumsy attempts to pass contributions through to candidates,” and thus further regulation was constitutionally justifiable. Id.
This aspect of the Supreme Court’s ruling in Colorado II effectively undermines our previous conclusion that Missouri’s limitations on parties’ contributions to its candidates were unnecessary and thus unconstitutional because Missouri already had a law in place that prohibited earmarking agreements. See Lamb, 227 F.3d at 1073. The Missouri Republican Party argues vigorously, however, that there is no evidence in the present record that parties’ contributions are in fact being used to circumvent Missouri’s limitations on contributions by individuals, and that the state has therefore failed to carry its burden to justify the relevant regulation. We believe, however, that it is not necessary for the state to show that circumvention is actually occurring in Missouri, for the factual record developed in Colorado II suffices to justify Missouri’s conclusion that means other than its earmarking prohibition are necessary to prevent circumvention.
In a closely analogous situation, the Court ruled that “[t]he First Amendment does not require [a legislative body], before enacting ... an ordinance, to conduct new studies or produce evidence independent of that already generated by other [legislative bodies], so long as whatever evidence the [legislative body] relies upon is reasonably believed to be relevant to the problem that the [legislative body] addresses.” City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 51-52, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). While the state of Missouri of course did not rely on the evidence produced in Colorado II to justify its statute, it makes little constitutional sense to invalidate the statute when it would have been perfectly constitutional if it could have been shown that the Missouri legislature (in some collective sense?) had passed the statute with the proper frame of mind. In other words, we think that a statute is constitutional if there is objective evidence of facts sufficient to render that statute valid, even if those facts were not operating subjectively in the minds of the legislators to motivate them when they enacted that statute. Any other rule would prove unworkable because, among other things, the minds of legislators are largely unknowable, individual legislators have various motives for voting the same way on the same bill, and legislative history is nonexistent in many states.
In short, we think that the holding in Colorado II establishes as a matter of law the constitutionality of the Missouri statutes relevant here. We note, too, that the evidence that the Court relied on in Colorado II to uphold the federal statute was not in existence when FECA was passed: That evidence was produced by the Federal Election Commission and was based on its experience under FECA. This serves to bolster our confidence in the view already expressed that no predicate record-making by the state of Missouri is necessary be *571 fore the validity of its statute can be established.
Nor can we say that the limits that Missouri has set on political contributions by parties, though they are much lower than those upheld in Colorado II, are so low that they violate the First Amendment. The Supreme Court, in Nixon v. Shrink Mo. Gov’t PAC, 528 U.S. 377, 397, 120 S.Ct. 897, 145 L.Ed.2d 886 (2000), quite emphatically held that the relevant question in the context is whether contribution limits are “so radical in effect as to render political association ineffective, drive the sound of a candidate’s voice below the level of notice, and render contributions pointless.” Nothing in this record would indicate to us that these circumstances obtain in the state of Missouri at the present time.
We close our consideration of this aspect of the case with the observation that the Missouri Republican Party, in common with other political parties in Missouri, continues to have substantial avenues for expressing its support of its candidates and for maintaining a political and ideological solidarity with those candidates. As the Court observed in Buckley v. Valeo, 424 U.S. 1, 21, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam), “[a] limitation on the amount of money a person may give to a candidate ... does not in any way infringe the contributor’s freedom to discuss candidates and issues.” The mode of discussion that the party chooses, moreover, may include advertising campaigns designated to promote issues and candidates, so long as those campaigns are not coordinated with those candidates. “The independent expression of a political party’s views is ‘core’ First Amendment activity no less than is the independent expression of individuals, candidates, or other political committees,” Colorado Republican Fed. Campaign Comm. v. Federal Election Comm’n, 518 U.S. 604, 616, 116 S.Ct. 2309, 135 L.Ed.2d 795 (1996) (opinion of Breyer, J.), and it is therefore not subject to limitation. The Missouri Republican Party may “spend money in support of a candidate without legal limit so long as it spends independently.” Colorado II, 121 S.Ct. at 2366.
II.
The Missouri Republican Party asserts that a remand is necessary because the district court did not address its claim that its due process rights were violated when the Missouri Election Commission (MEC) misled the Party into believing that there were no enforceable limits on party contributions. The Party asserts that the MEC told it that its contribution limits were ten times the limits on individual contributions, and, the Party claims, this statement led the Party to believe that there were no limits on its contributions because at the time that the MEC made the statement the limits on individual contributions had been enjoined. That, the argument runs, the MEC was saying that there were no limits on Party contributions because 10 times infinity is infinity.
It is true, as the Party says, that the district court did not address this claim, but we think that that was for a good reason: The Party never made this claim below. Its claim, instead, was that the MEC violated due process when it calculated the limits on parties’ contributions by multiplying the limits on individuals by ten because, in Shrink Mo. Gov’t PAC v. Adams, 151 F.3d 763 (8th Cir.1998), we had enjoined the enforcement of the statutes that set the limit on individuals. We see no merit in this argument. We had not enjoined the enforcement of Mo.Rev. Stat. § 130.032.4, the statute at issue here, and that statute set limits on parties at a figure that was numerically ten times that of the limits on individuals. The fact that *572 we had declared these latter limits unconstitutional had no bearing on the efficacy of the limits on parties and no effect on the MEC’s right and duty to enforce those limits. In other words, the MEC, pursuant to one statute, set numbers that were ten times the numbers that appeared in another statute; the fact that the enforcement of the latter statute had been enjoined as unconstitutional cannot furnish the basis for a constitutional claim, even if the limit chosen was not in conformity with state law.
The Party argues, finally, that the district court erred in not addressing its contention that the spending limits were being enforced against it in a discriminatory fashion: The Party maintains that the MEC has ignored violations of contribution limits by the Missouri Democratic Party and seven of that party’s candidates. But the Party never advanced this contention, either as a claim or as a defense, in the court below. The court was therefore not obligated to deal with it. We express no view on the ultimate merits of any action that the Party might bring in the future for discrimination against them in the enforcement of the relevant statutes.
III.
For the reasons indicated, the judgment of the district court is affirmed.